IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 18-cv-03240-RBJ

DAVID MINDOCK and
ASPEN GLADE LTD., a Colorado limited liability company,

      Plaintiffs,

v.

CHRISTINA J. BRUFF DUMARS, and
MATTHEW J. BRUFF,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

This matter is before the Court on two motions. First, involuntary-plaintiff Matthew J.

Bruff ("Bruff") moves to dismiss defendant Christina Bruff DuMars' ("DuMars") counterclaim

against him pursuant to Fed. R. Civ. P. Rule 12(b)(6). ECF No. 50. Second, DuMars moves for

summary judgment pursuant to Fed. R. Civ. P. 56 and D.C.COLO.LCivR 56.1 seeking to dismiss

the complaint filed against her by David Mindock and Aspen Glade Ltd. ("Aspen Glade"). ECF

No. 51. For the reasons stated herein, Bruff's motion to dismiss is GRANTED and DuMars'

motion for summary judgment is DENIED.

## I. BACKGROUND

This case arises out of disagreement over ownership interests in a family vacation cabin.

In 1974 Stephen and June Mindock purchased and built a cabin on a parcel of land in Blue River,

Colorado (the "property"). ECF No. 50 at 2; ECF No. 55-1 at 1. Stephen and June had three

children: David Mindock, Peter Mindock, and Stephanie Mindock. ECF No. 50 at 2. In 1987

Stephen and June conveyed 15/64ths of the property each to David and Peter by quitclaim deed (approximately 23.44% each, or 46.88% total), retaining a life estate for themselves. *Id*. In 2007 Stephen and June conveyed their remaining 53.12% interest in fee simple by warranty deed (the "2007 Deed") to Stephanie's children—DuMars and Bruff—as joint tenants with rights of survivorship. *Id*. June died on April 1, 2011, and Stephen died on July 1, 2014. ECF No. 2 ¶ 16.

The 2007 Deed states that in conveying the property to their grandchildren DuMars and Bruff, Stephen and June "intended to maintain joint ownership of the Property within the Mindock Family." ECF No. 50-2 at 1. Accordingly, the 2007 Deed includes the following restrictive conditions:

> If either Joint Tenant, without the written consent of the other, attempts to a) partition the property, or b) convert this joint tenancy into a tenancy in common with respect to any interest conveyed by this Warranty Deed or other interest in the Property currently owned or subsequently acquired by such Joint Tenant, then the Property shall, by operation of law, revert to the other Joint Tenant in fee simple immediately without requirement of judicial intervention or further legal conveyance.

*Id*.

On September 8, 2014 Bruff formed Aspen Glade. ECF No. 47 at 9. On September 29, 2014 Peter conveyed his 23.44% property interest by quitclaim deed to Aspen Glade. ECF No. 54 at 2. Peter died in October of 2014. ECF No. 2 ¶ 18. Bruff did not disclose to DuMars the formation of Aspen Glade or the conveyance of Peter's property interest to Aspen Glade. ECF No. 47 at 9. DuMars discovered this information in the spring of 2015 when she accessed the Summit County Assessor's Office to pay property tax. *Id.* ¶ 10. Aspen Glade conducts no other business beyond holding title to the interests received from Peter. *Id.* at ¶ 12.

The current status of the property is as follows: DuMars and Bruff own 53.12% in fee simple as joint tenants; Aspen Glade owns 23.44% as a tenant-in-common; and David owns

23.44% as a tenant-in-common.  ECF No. 50-1 at 2.  DuMars currently occupies the property

and has done so since shortly after execution of the 2007 Deed.  ECF No. 51 ¶ 3.  Bruff

occasionally uses the property as a vacation retreat, and he maintains furniture and personal

possessions within the property year-round.  *Id.*

## Procedural Background

On October 1, 2018 David and Aspen Glade ("the original plaintiffs") filed a complaint

in the District Court for Summit County, Colorado.  ECF No. 2.  They asserted a single claim

against DuMars and Bruff for declaratory judgment that (1) certain clauses in the 2007 Deed

constitute unreasonable restraints on alienation and are therefore stricken; (2) DuMars and Bruff

together own 34/64ths of the property as joint tenants; (3) DuMars and Bruff are tenants-in-

common with David and Aspen Glade; and (4) DuMars and Bruff "have the right to unilaterally

convey and convert their respective shares from joint tenancy to tenancy-in-common, the right to

obtain additional interests in the Property, and the right to partition the Property under Colorado

law without penalty."  *Id.* ¶ 51.

DuMars removed the case to federal court on December 17, 2018 pursuant to 28 U.S.C.

§§ 1332(a), 1441(b), & 1446.  ECF No. 1 ¶ 1.  On May 14, 2019, pursuant to joint stipulation by

the parties, this Court realigned Bruff as an involuntary plaintiff.  ECF Nos. 40, 44.

On June 27, 2019 DuMars, now as sole named defendant, filed a counterclaim against

involuntary-plaintiff Bruff for breach of shifting executory interest.  ECF No. 47 at 8.  She

asserts that "[t]he secretive and willful actions taken by [Bruff] violate the 2007 Deed Clause

because he received an additional interest in the [property] without the written consent of

[DuMars]" by "cloaking himself in the alter-ego guise of Aspen Glade."  *Id.* at 10.  DuMars asks

the court to find that as a result of this violation, Bruff's interest in the property has reverted by

operation of law to DuMars.  *Id.* at 10–11.

In response, Bruff filed a motion to dismiss DuMars' counterclaim against him on June 24, 2019.  ECF No. 50.  On June 27, 2019 DuMars filed a motion for summary judgment seeking dismissal of the complaint under the seven-year statute of limitation provided in Colo. Rev. Stat. Ann. § 38–41–111.  ECF No. 51.

In this order I address both Bruff's motion to dismiss and DuMars' motion for summary judgment.

## II.  STANDARD OF REVIEW

### A.  Motion for Summary Judgment

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

**B. Motion to Dismiss**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See Twombly*, 550 U.S. at 556. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

### III. ANALYSIS

**A. DuMars' Motion for Summary Judgment on Colo. Rev. Stat. Ann. § 38–41–11**

I first address DuMars' motion for summary judgment to dismiss the original plaintiffs' complaint. ECF No. 51. DuMars asserts that the original plaintiffs' suit is time-barred under Colo. Rev. Stat. Ann. § 38–41–111.[1] Section 38–41–111 provides a seven-year statute of limitation for suits challenging "any final decree or final order of any court of record in this state

---

[1] Per my prior order, if the law of real property provides an applicable limitation period for this declaratory judgment action, then that limitation period applies in lieu of the two-year catch-all statute of limitation for declaratory judgment claims. ECF No. 46 at 8–9.

or any instrument of conveyance, deed, certificate of sale, or release executed by any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official whatsoever." Colo. Rev. Stat. Ann. § 38–41–111(1).

In response, the original plaintiffs argue (1) that § 38–41–111 applies only to title derived from "governmental action that resulted in the issuance of a deed from a public official," and (2) that the 2007 Deed was not conveyed by governmental action but rather by Stephen and June as private individuals. ECF No. 55 ¶ 4. I address each argument in turn.

1. Statutory Interpretation of Colo. Rev. Stat. Ann. § 38–41–111

DuMars argues that Colo. Rev. Stat. Ann. § 38–41–111 broadly precludes attack on five sources of title: (1) judicial conveyance; (2) any other instrument of conveyance; (3) conveyance by deeds; (4) conveyance by certificate of sales; and (5) releases "executed by any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official." I find that this interpretation contradicts both a plain reading of the statute and Colorado state law precedent. Rather, § 38–41–111 precludes attack on only two sources of title: (1) judicial conveyance and (2) any conveyance "executed by a private trustee, successor in trust, public trustee, sheriff, marshal, country treasurer, or any other public official."

First, DuMars' interpretation contradicts a plain reading of § 38–41–111. DuMars improperly interprets the qualification of "executed by any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official" as applying only to "releases" and not to "any instrument of conveyance, deed, [or] certificate of sale." ECF No. 57 at 3. She thus reads "any instrument of conveyance, deed, [or] certificate of sale" as a stand-alone phrase unconnected to any trustee or public official action. ECF No. 57 at 3.

Yet a plain reading of the statute indicates that the qualification of "executed by any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official" does apply to "any instrument of conveyance, deed, certificate of sale, or release." The statute's inclusion of multiple types of title instruments here is relevant only to establish that the statute covers all instruments, not as a way to distinguish those types of instruments from one another. Nor does it make any policy sense to limit the public official qualification to the narrow category of "releases" when public official–derived title often takes the form of deeds, certificate of sales, or other instruments.

Further, DuMars' interpretation would render much of the statute surplusage. DuMars' second alleged category of title source—"any other instrument of conveyance"—would subsume all four other categories of title source. It would be nonsensical to create one catch-all category of all "instrument[s] of conveyance" plus four narrow categories of conveyance (judicial conveyance, deeds, certificate of sales, and public-action releases).

Instead, a proper plain reading of the statute provides: "any final decree or final order of any court of record in this state *or* any instrument of conveyance, deed, certificate of sale, or release executed by any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official whatsoever." The statute thus precludes attack on only two sources of title: (1) conveyance by "any final decree or final order of any court" and (2) conveyance by "any private trustee, successor in trust, public trustee, sheriff, marshal, county treasurer, or any public official whatsoever." Put more simply, a plain reading of the statute indicates that § 38–41–111 applies only to title derived either by trustee or by public action (including judicial conveyance).

Second, this plain reading of § 38–41–111 is supported by Colorado state law precedent. Colorado courts have applied § 38–41–111 only in the context of title derived by trustee or public action. *See United States v. Novotny*, 184 F. Supp. 2d 1071, 1090 (D. Colo. 2001) (analyzing section in the context of trust's quiet title counterclaim seeking to affirm conveyance by trustee), *on reconsideration in part,* No. 99-D-2196, 2001 WL 1673628 (D. Colo. Nov. 8, 2001), and *aff'd,* 71 F. App'x 792 (10th Cir. 2003), and *aff'd,* 71 F. App'x 792 (10th Cir. 2003); *Ginsberg v. Stanley Aviation Corp.*, 568 P.2d 35, 38 (Colo. 1977) (analyzing section in the context of a challenge to a judicial conveyance); *Battle N., LLC v. Sensible Hous. Co.*, 370 P.3d 238, 252–53 (Colo. App. 2015) (applying section to preclude challenge to treasurer's deed); *Dynasty, Inc. v. Winter Park Assocs., Inc.*, 5 P.3d 392, 394 (Colo. App. 2000) (applying section to preclude challenge to treasurer's deed); *Kriss v. Mineral Rights, Inc.*, 911 P.2d 711, 713–14 (Colo. App. 1996) (analyzing section in the context of a challenge to a sheriff's deed); *LeSatz v. Deshotels*, 757 P.2d 1090, 1092 (Colo. App. 1988) (applying section to preclude challenge to deed executed by legislative act); *Joseph v. Joseph*, 608 P.2d 839, 840 (Colo. App. 1980) (internal citation omitted) (applying section to preclude challenge to deed executed by court clerk).

Language used by Colorado courts to describe § 38–41–111 also expressly couches it narrowly in terms of public action. For example, in *LeSatz v. Deshotels* a Colorado appellate court summarized § 38–41–111 as providing "an unequivocal seven-year limitation upon maintaining an action against persons in possession attacking the validity of 'any instrument of conveyance . . . executed by . . . any public official whatsoever' when such recorded instrument is the source of title or right to the possessor or his predecessors." 757 P.2d at 1092 (alterations in original); *see also Kriss v. Mineral Rights, Inc.*, 911 P.2d at 713–14 ("Section 38–41–

111(1) provides, in pertinent part, that no action shall be maintained against a person in possession of real property to attack the validity of any deed executed by a sheriff . . . ."); *Joseph*, 608 P.2d at 840 ("Section 38–41–111 precludes an action to challenge the title to real property when that title is derived from a final order of a court of record . . . ."). Such narrowing language would be irrelevant if § 38–41–111 were not limited to title derived from trustee or public action.

Courts' discussion of analogous statutes—both the predecessor statute to § 38–41–111 and the parallel federal statute of limitation—also comports with the plain reading interpretation. In analyzing the predecessor statute to § 38–41–111, the Supreme Court of Colorado refused to provide additional protections to owners of titles acquired by tax deed beyond the statute of limitation. *See Bald Eagle Mining & Refining Co. v. Brunton*, 437 P.2d 59, 61 (Colo. 1968). The court explained that the predecessor statute of limitation "provide[d] sufficient protection for the purchasers of property under tax deeds without further limitation [on challenges to those tax deeds] being imposed by the courts." *Id.* (noting that the statute "ma[de] a title acquired by tax deed virtually invulnerable to attack after it ha[d] been of record seven years"). In that same vein, a Colorado Court of Appeals court described the predecessor statute as "a powerful defense to a holder of real property under a defective Treasurer's Deed against the onslaught of former title holders." *Bd. of Cty. Comm'rs of Pitkin Cty. v. Blanning*, 479 P.2d 404, 406 (Colo. App. 1970).

A federal District of Colorado court made similar policy conclusions regarding the parallel federal statute of limitation. The court first expressly analogized § 38–41–111 to the federal statute of limitation under 43 U.S.C. § 1166. *See United States v. Eaton Shale Co.*, 433 F. Supp. 1256, 1268 & n.6 (D. Colo. 1977) ("We note that the Colorado statute of

limitation, C.R.S. 38–41–111 (1973), is to the same purpose and effect, and strengthens our interpretation of the federal statute herein.").  The court then described the purpose of § 1166 as "protect[ing] [real property and interests] whether or not the executive agency had authority to issue it" by "extinguish[ing] any right the government may have in the land."  *Id.* (citing *Burke v. So. Pac. R. Co.*, 234 U.S. 669 (1914)).  In so doing, § 1166 rendered "real property and interests . . . more secure and marketable."  *Id.*

These policy discussions indicate that both the predecessor statute of limitation and the analogous federal statute of limitation are inherently linked to public action.  These two statutes were apparently intended to protect the owners of titles acquired through public action, regardless of whether the public official had the authority to issue the title.  That protection may have been particularly relevant to title acquired through public action because of the potential "onslaught" of claims that could be brought both by former title holders and by the government itself.  Given this policy history, it makes sense that § 38–41–111 is specific to title conveyed either by trustee or public action.

Based on a plain reading of the statute and Colorado state law precedent, I find that § 38–41–111 applies only to title conveyed either by trustee or public action.

2.  Application of Colo. Rev. Stat. Ann. § 38–41–11 to the Instant Case

To succeed on her statute of limitation claim under Colo. Rev. Stat. Ann. § 38–41–111, DuMars must show that the 2007 Deed was conveyed either by trustee or by public action. DuMars argues that even if her interpretation of § 38–41–111 is incorrect, the 2007 Deed was indeed conveyed by "private trustee."  ECF No. 57 at 2–3.

In order for a private trustee to convey title, there must be a valid trust from which to convey, and the property must have been validity conveyed to that trust.  The elements of a valid

trust include "(1) the settlor's capacity to create a trust; (2) his intention to create a trust; (3) a declaration of trust or a present disposition of the res; (4) an identifiable trust res; (5) a trustee; and (6) identifiable beneficiaries." *In re Granberry's Estate*, 498 P.2d 960, 963 (Colo. App. 1972). Given a valid trust, that trust may acquire real property upon compliance with Colo. Rev. Stat. Ann. § 38–30–166. *See, e.g.*, *Novotny*, 184 F. Supp. 2d at 1087 (applying § 38–30–166). Section 38–30–166 requires a trustee to record an affidavit setting forth the name of the trust and the names and addresses of all trustees with the county clerk and recorder of the county in which the property interest is located. *Id.*; *see also* § 38–30–166(2)(a).

To establish that the property was conveyed by private trustee, DuMars points to express language in the signature block of the 2007 Deed stating that Stephen and June conveyed the property to DuMars and Bruff as private trustees. ECF No. 51-1 at 1. Specifically, the signature block was executed by Stephen W. Mindock "individually and as trustee of the Trust Agreement of Stephen W. Mindock Dated 9/21/07" and by June Hoikka Mindock "individually and as trustee of the Trust Agreement of June H. Mindock Dated 9/21/07." ECF No. 51-1. Yet DuMars has not provided the trust agreements themselves. Mere reference to a "Trust Agreement" is insufficient to establish either the creation of a valid trust or a valid conveyance to that trust. *See In re Granberry's Estate*, 498 P.2d at 963; *see also Novotny*, 184 F. Supp. 2d at 1087. DuMars has not shown that Stephen and June validly created a trust or that they conveyed relevant title to that trust.

Additionally, the original plaintiffs proffer evidence indicating that the trust never held title to the property. The original plaintiffs have provided what they allege are "all subsequent deeds of record" relevant to the title. ECF No. 55 ¶ 5; ECF No. 50-1. DuMars does not expressly contest that these constitute all relevant deeds of record. The original plaintiffs point

11

out that these records do not include any conveyance of relevant title to a trust.  ECF No. 50-1.

Because any valid conveyance necessarily must be recorded with the county clerk and recorder

of the county in which the property is located, a conveyance of title to the trust would have been

recorded had it existed.  *See* Colo. Rev. Stat. Ann. § 38–30–166.  As such, the original plaintiffs

argue that there was no valid conveyance to the trust, and subsequently the title conveyed by the

2007 Deed was owned individually by Stephen and June at the time of conveyance rather than in

their capacity as private trustees.  ECF No. 55 ¶ 5.

I find that even if DuMars can show at trial that Stephen and June validly created a trust,

there exists no genuine dispute of material fact over whether title was properly conveyed to that

trust.  Accordingly, DuMars' motion for summary judgment is denied.

### B.  **Bruff's Motion to Dismiss**

I next address Bruff's motion to dismiss DuMar's counterclaim against him.  Bruff

presents three arguments: (1) the restrictive conditions in the 2007 Deed are unenforceable; (2)

even assuming the restrictive conditions are enforceable, DuMars has not pled sufficient facts

indicating that Bruff has breached those conditions; and (3) the statute of limitation under § 38–

41–111 does not apply.  ECF No. 50.

Bruff first argues that DuMar's counterclaim fails to state a claim because the restrictive

conditions in the 2007 Deed are unenforceable under Colorado law.  *Id.* at 6.  He proffers five

reasons: (1) the conditions are an unreasonable restraint on alienation; (2) the conditions violate a

joint tenant's absolute right to terminate a joint tenancy unilaterally; (3) the conditions violate the

absolute right to partition; (4) the conditions are incompatible with a fee simple estate; and (5)

the conditions contravene public policy.

I agree that the restrictive conditions in the 2007 Deed constitute an unreasonable restraint on alienation. The rule against unreasonable restraint "involves the determination of the validity of a future restraint on property transfer when weighed against the public policy that property should be freely alienable." *Perry v. Brundage*, 614 P.2d 362, 367 (Colo. 1980). Whether a restrictive condition violates the rule against unreasonable restraint is a mixed question of law and fact. *See Atl. Richfield Co. v. Whiting Oil & Gas Corp.*, 320 P.3d 1179, 1184 (Colo. 2014). "When the controlling facts are undisputed . . . the legal effect of those facts constitutes a question of law." *Turbyne v. People,* 151 P.3d 563, 572 (Colo. 2007). Here, because the terms of the 2007 Deed as provided in the complaint control at the Rule 12(b)(6) stage, I review the legal impact of those terms de novo. *See id*.

To determine the reasonableness of a restraint, courts balance "the utility of the purpose served by the restraint against the harm that is likely to flow from its enforcement." *Atl. Richfield Co.*, 320 P.3d at 1185 (quoting Restatement (Third) of Prop.: Servitudes § 3.4 cmt. c (2000)). This involves evaluating the "nature, extent, and duration of the restraint" and the "nature of the property interest and the type of land or development involved." *Id*. at 1185. It is "well-established" that the nature of fee simple estates is such that any condition totally prohibiting alienation is unreasonable. *See Cronk v. Shoup*, 197 P. 756, 757 (Colo. 1921) (quoting *De Peyster v. Michael*, 6 N.Y. 467, 492 (1852) ("The law does not permit restraints to be imposed upon the alienation of an estate in fee simple. 'It is a well-established principle where an estate in fee simple is granted, a condition that the grantee shall not alien the land is void.'"); *see also Edwards v. Bradley*, 315 S.E.2d 196, 198 (Va. 1984) ("As a general rule, a condition totally prohibiting the alienation of a vested fee simple estate or requiring a forfeiture upon alienation is void."). The Supreme Court of Colorado has expressly addressed this issue in

dicta, providing the following hypothetical: "A conveys land to B in fee simple with the provision that if B during his lifetime shall convey or attempt to convey it the land shall become the property of C in fee simple. This . . . is violative of the rule against restraints with the result that B obtains a fee simple absolute." *Atchison v. City of Englewood*, 463 P.2d 297, 301 (Colo. 1969).

The restrictive conditions in the 2007 Deed are classic restraints on the alienation of a fee simple estate. *See Perry*, 614 P.2d at 367 ("Classic restraints generally place a limitation upon the owner's right to sell the property to a third person."). Although the conditions do not expressly prohibit the grantees—DuMars and Bruff—from selling the property, the conditions do prohibit the grantees from partitioning the property or converting it into a tenancy in common. This prohibition operates in practice as a complete restraint on alienation, as the grantees cannot sell without either partitioning the property or converting their joint tenancy to a tenancy in common.

Under "well-established" Colorado law, such a total prohibition on alienation is inherently incompatible with the grant of a fee simple estate. *See Cronk*, 197 P. at 757. The restrictive conditions apply to the grantees until one of the grantees dies—the lifetime of at least one of the grantees. It is not relevant that the condition can be superseded by "written consent of the other [joint tenant]." ECF No. 50 at 1. This qualification merely allows one owner to prevent the other owner from ever alienating the property, as illustrated in the instant case.

DuMars makes several counterarguments. She first argues that the validity of the restrictive conditions is inappropriate to resolve at the Rule 12(b)(6) stage because there remain questions of fact including "the intent of the grantors, the value that can be assigned to their goal of keeping the property in the hands fairly as among [sic] their grandchildren, and whether any

one [sic] is actually denied the right to alienate their property." ECF No. 54 at 9–10. She asserts

that at trial, she will show that the grantors—Stephen and June—"intended to maintain joint

ownership of the Property within the Mindock Family through the grandchildren." *Id.* at 11.

Contrary to DuMars' assertions, we do not need fact-finding on any of these issues. The

statement of intent that DuMars claims that she will prove at trial is included in the complaint

and expressly written into the 2007 Deed. ECF No. 2 at 3. The statement of intent also confirms

that Stephen and June actively intended to restrain alienation. At any rate, both the grantors'

intent and the value assigned to that intent is less relevant here since case law precludes restraint

on alienation of fee simple estates anyway. Nor is it relevant that Bruff "has no intent to sell his

interest to any third person" and therefore is not "actually denied the right to alienate [the]

property." ECF No. 54 at 10. The factual question of whether Bruff has in the past attempted or

intends in the future to sell his interest has no effect on the legal operation of the restrictive

conditions, which is what is at issue here.

DuMars also argues that even if it is appropriate to consider the validity of the restrictive

conditions at the Rule 12(b)(6) stage, the conditions are reasonable restraints on alienation. ECF

No. 54 at 10. Citing the Restatement (Second) of Property, she asserts that the conditions are

reasonable because they are "limited in duration to the life of one of the joint tenant

grandchildren" and they affect "only two persons," i.e., DuMars and Bruff. ECF No. 54 at 11

(citing Restatement (Second) of Property: Donative Transfers § 4.2).

DuMars misapplies the Restatement, perhaps in part by confusing the rule against

perpetuities with the rule against unreasonable restraint on alienation. "Both rules have the same

fundamental purpose," but "[t]he rule against perpetuities invalidates interests which Vest too

remotely" whereas "[t]he rule against restraints upon alienation relates to other unreasonable

restraints." *Atchison*, 463 P.2d at 301. The fact that the conditions are "limited in duration to the life of one of the joint tenant grandchildren" means that the conditions are not invalid under the rule against perpetuities. But the conditions are invalid under the rule against unreasonable restraint because, as discussed above, it unreasonably restrains either grantee from ever alienating the property until the other joint tenant dies. *Id.* (indicating that a restraint on alienation of a fee simple estate for a grantee's lifetime is invalid).

Alternatively, DuMars' misapplication may be due to confusion over the relevant property interest. Her argument may refer to subsection (1) of the Restatement, which expressly allows restraints "on a life interest in property, or on an interest for a term of years that will terminate at the end of a life (or reasonable number of lives) in being at the time of the transfer." Restatement (Second) of Property: Donative Transfers § 4.2. However, the property at issue here is not a life interest—it is a fee simple estate. Subsection (1) of the Restatement thus does not apply.

It is also irrelevant that the conditions restrain "only" DuMars and Bruff. ECF No. 54 at 11. The relevant consideration is not how many owners are restrained but rather how many people to whom the owners are restrained from selling. Conditions that restrain an owner from transferring to a large number of people, or even to a small number of people that comprises a large percentage of probable transferees, are generally invalid. *See* Restatement (Second) of Property: Donative Transfers § 4.2 (explaining that although it is "impossible . . . to state just what number of potential transferees must be excluded to make the restraint unreasonable," the relevant consideration is "whether the number excluded is so small or so situated with relation to the property involved that their elimination . . . does not affect . . . the power of alienation").

Here, the conditions operate to restrict DuMars and Bruff from selling the property to anyone except one another. This is not a limited, reasonable restraint.

Finally, DuMars analogizes to *Dormer v. Walker*, in which the Supreme Court of Colorado upheld an executory interest clause that vested the remainder of a life estate in fee simple to the remainderman. 69 P.2d 1049, 1052 (Colo. 1973). *Dormer* is inapposite to the case at hand. *Dormer* involved the granting of a life estate conditioned on the grantee's payment of taxes and assessments. *Id.* at 1050. This case involved no discussion of unreasonable restraint, and furthermore, it involved a life estate rather than a fee simple estate. In contrast, the instant case involves the granting of a fee simple estate conditioned on the grantees' never selling the property. This condition directly and intentionally restrains the grantees' ability to alienate a fee simple estate. And as discussed, it is essential that the instant case involves a fee simple estate, because case law prohibits any restraint on alienation of a fee simple estate. The only similarity between the instant case and *Dormer* is that both involve executory interest clauses—and no one here argues that executory interest clauses themselves are inherently invalid.

As a matter of law, the 2007 Deed includes restrictive conditions that constitute unreasonable restraint on alienation and are thus invalid. Because the restrictive conditions are invalid, Bruff has not breached the 2007 Deed. Because Bruff has not breached the 2007 Deed, DuMars has failed to state a claim for which relief can be granted. Accordingly, Bruff's motion to dismiss is granted, and DuMars' counterclaim is dismissed.

**ORDER**

1. Involuntary plaintiff Matthew J. Bruff's motion to dismiss, ECF No. 50, is

   GRANTED.

2. Defendant Christina Bruff DuMars' motion for summary judgment, ECF No. 51, is

   DENIED.

3. The Court enters judgment dismissing defendant's counterclaim against Bruff for

   breach of shifting executory interest.

   DATED this 18th day of December, 2019.


                                   BY THE COURT:


                                   _____
                                   R. Brooke Jackson
                                   United States District Judge